## MORGAN v. STATE OF INDIANA.

[No. 24,659.  Filed March 12, 1926.]

1. INDICTMENT.—*Indictment in the language of the statute defining the crime is sufficient when acts constituting violation thereof are set out therein.*—Where the statute in defining a crime sets out 'the acts that will constitute a violation thereof, an indictment or affidavit substantially in the language of the statute is sufficient.  p. 376.

2. INTOXICATING LIQUORS.—*Indictment charging the felonious transportation of intoxicating liquor under Acts 1923 p. 108 held sufficient.*—An indictment charging the felonious transportation of intoxicating liquor in an automobile substantially in the language of the statute (Acts 1923 p. 108) held sufficient.  p. 376.

3. INTOXICATING LIQUORS.—*Title of act of 1923 (Acts 1923 p. 108) making it a felony to transport intoxicating liquor in a vehicle covered the subject of the act.*—The title of the act of 1923 (Acts 1923 p. 108) making it a felony to transport intoxicating liquors in a vehicle included the subject of the act so as not to violate Art. 4, §19 of the Constitution (§122 Burns 1926).  p. 377.

4. INTOXICATING LIQUORS.—*Indictment charging transportation of intoxicating liquor in automobile not bad for uncertainty.*—An indictment charging the transportation of intoxicating liquor in an automobile was not bad for uncertainty, although there were two acts (Acts 1923 pp. 70, 108) making the transportation of intoxicating liquor a criminal offense, but the last was the only one that made transportation in a vehicle a crime.  p. 377.

5. SEARCHES AND SEIZURES.—*Admissibility of evidence obtained by unlawful search is properly presented by a motion before trial to suppress the evidence and objection to its admission when offered.*—The admissibility of evidence obtained by an unlawful search is properly presented by a motion before trial to suppress the evidence and a timely objection to its admission when offered in evidence.  p. 378.

6. **SEARCHES AND SEIZURES.**—*Unlawful arrest cannot be the foundation for a lawful search, nor information obtained by an unlawful search furnish the basis for lawful arrest.*—An unlawful arrest cannot be the foundation for a lawful search, nor information obtained by an unlawful search alone furnish the basis for a lawful arrest.  p. 380.

7. **SEARCHES AND SEIZURES.**—*Unlawful search cannot be validated by what afterwards takes place.*—Where an arrest or search is unlawful to begin with, it is not made lawful by what afterwards takes place.  p. 380.

8. **ARREST.**—*Peace officer has no authority to make an arrest for misdemeanor not committed in his presence, and carrying a revolver concealed is not offense committed in his presence within the meaning of the law.*—A peace officer has no authority to make an arrest for a misdemeanor not committed in his presence, and carrying a revolver concealed is not an offense committed in his presence within the meaning of the law. p. 381.

9. **ARREST.**—*Peace officer may arrest without warrant when he has reasonable and probable cause to believe that the person arrested has committed a felony.*—A peace officer may arrest without a warrant when he has reasonable and probable cause for believing that a felony is being or has been committed by the person arrested.  p. 381.

10. **ARREST.**—*Arrest without warrant held unwarranted and search of accused's automobile unjustified under facts stated.*—The arrest, without warrant, of the driver of an automobile who, seeing a truck in the highway surrounded by a small group of men, stopped his car, and joined them, was unwarranted and a search of his car unjustified, where he had committed no observable offense in the presence of the officers and they had no knowledge or even suspicion that he had violated the law in any manner, although their search of the car revealed a pint bottle of whisky of the same kind as found in the truck and a search of his person after his arrest disclosed the fact that he was carrying a weapon concealed in violation of law, and evidence obtained by such search should have been suppressed on motion to that effect.  p. 382.

From Marion Criminal Court (55,752); *James A. Collins,* Judge.

George Morgan, alias John Marcus, was convicted of unlawfully transporting intoxicating liquor in an automobile, and he appeals.  *Reversed.*

*Emsley W. Johnson, Ryan, Ruckelshaus & Ryan, T. Ernest Maholm* and *W. F. Elliott,* for appellant.

*U. S. Lesh,* Attorney-General and *Mrs. Edward Franklin White,* Deputy Attorney-General, for the State.

MYERS, J.—In the court below, appellant was convicted of feloniously transporting intoxicating liquor in an automobile, in violation of §1, Acts 1923 p. 108. On appeal from the judgment rendered against him, he has assigned as errors the overruling of his motion to quash the indictment and the overruling of his motion for a new trial.

The indictment charges, in substance, that appellant, on December 16, 1923, in Marion county, Indiana, "did then and there unlawfully, knowingly and feloniously transport intoxicating liquor in an automobile within said county and state." By the motion to quash, appellant asserts that the indictment does not state a public offense, nor does it state an offense with sufficient certainty, in that: (1) Transportation of intoxicating liquor within the county is not a felony; (2) that the foregoing act is unconstitutional and void for the reason that its title discloses its subject as intoxicating liquor only, while the body makes the subject of the act vehicle transportation of intoxicating liquor; (3) that the indictment is uncertain and indefinite because the accused, from the language of the indictment, could not certainly know whether he was being prosecuted under §1, *supra,* for a felony, or under an act passed three days earlier (Acts 1923 p. 70) making it a misdemeanor to transport intoxicating liquor.

Answering appellant's first contention, this court has ruled that, as a matter of pleading, when the statute defining the crime includes the acts which constitute it, the affidavit or indictment substantially in the language of the statute is sufficient. *Shine*

v. *State* (1925), 196 Ind. 686, 148 N. E. 411; *Simpson* v. *State* (1925), 195 Ind. 633, 146 N. E. 747; *Anderson* v. *State* (1924), 195 Ind. 329, 145 N. E. 311.

Appellant's second objection to the indictment, as we understand him, is predicated upon the theory that the title of the act said to have been violated by him 3. was deceptive and served to screen its real subject and purpose as expressed in the body thereof, thus rendering it indefinite, uncertain, and therefore void. The section of the act defining the crime and fixing the penalty for its violation, consists of twenty-one lines of the printed acts, and is entitled, "AN ACT concerning intoxicating liquors, and declaring an emergency." The title is general and unrestricted. It is sufficient to notify the members of the legislature and the public that the proposed legislation was on the subject of intoxicating liquor. Notice of the subject-matter being sufficient, it must necessarily follow that such notice will be deemed adequate to claim the attention of those interested in the purpose and object to be attained by the bill, if given legislative sanction. Looking to the title and to the body of the act, it seems to us there is no escape from the conclusion that, although "intoxicating liquors" is the subject of the act, the means of transporting the same, whether by certain vehicles or otherwise, is a matter clearly germane to and properly connected with the subject expressed in the title, within the meaning of the Constitution. Art. 4, §19 Constitution; *Gmeiner* v. *State* (1925), *ante* 43, 149 N. E. 728, and cases cited; *State* v. *Bailey* (1901), 157 Ind. 324, 61 N. E. 730, 59 L. R. A. 435.

Appellant's third objection to the indictment must be denied for the reason the indictment upon which he was tried expressly charged him with transport-4. ing intoxicating liquor in a vehicle. As there is but one statute making such transportation a

crime, it can hardly be supposed that this distinguishing feature was not sufficient to dispel the belief that he was being prosecuted under another statute containing no such characterization.

Appellant, by his motion for a new trial, in addition to the claim of insufficient evidence, has properly presented for review the action of the court in overruling his motion to suppress, and the overruling of his objections made at the trial to the admission of, all evidence pertaining to all matters discovered by the search of his automobile. The motion to suppress and the objections to the questioned evidence were based upon constitutional grounds. We are not advised as to whether or not the trial court heard any evidence on the motion to suppress, but inasmuch as this motion was overruled and the evidence sought to be suppressed was thereafter, over timely objections, received at the trial, the question of its admissibility is undoubtedly presented. *People* v. *Marxhausen* (1919), 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505; 10 R. C. L. 933.

The testimony of the sheriff of Marion county, his son, a deputy, a federal prohibition officer, three members of the Horse Thief Detective Association, and a pint bottle of whisky was all the evidence given in this case. Speaking generally, the witnesses corroborated each other. This case, as disclosed by the evidence, originated on December 15, 1923, at about 8:30 o'clock in the evening, when the sheriff and the five other officers were around and about an Oldsmobile truck, headed east, standing on the National road, or West Washington street in Indianapolis, in charge of one Doncaster. Why the truck was standing there, or how it came to stop there, does not appear. While the sheriff was talking to Doncaster, appellant came from the west in an automobile, passed around the truck and officers to a point about fifty feet east of the sheriff's

automobile standing east of the truck. The distance
between the truck and this automobile is not shown. As
soon as appellant stopped his machine, he alighted, re-
turned to where the officers were standing, and, from
anything appearing, he voluntarily said: "Just came
back to see what the trouble was," or that "He was just
passing by and saw the trouble and stopped." No one
requested him to stop or that he get out of the car.
There is no showing that appellant committed any ob-
servable offense in the presence of the officers, nor that,
prior to the search of his car, did they have any knowl-
edge or suspicion that he was in anywise connected
with the truck, or that he was violating the law in
any manner. The sheriff testified that when appellant,
"came back to the truck, I had other officers out there
and they were searching the (appellant's) car," although
we had no warrant to search the car, grips or suitcase,
nor warrant for appellant's arrest. As appellant was
returning to his car, one of the horse thief detectives,
a Mr. Riddle, started after him, caught up with him,
and, as he turned around, this officer grabbed hold of
his coat lapel. Appellant then put his left hand in his
overcoat pocket. The officer grabbed it and held it
there, at the same time pushing a revolver against him
telling him to take his hand off his gun. About that
time, the sheriff's son came up, pointed a gun at ap-
pellant's face, saying: "Stick 'em up," which he did.
He took appellant's revolver and arrested him. Neither
of these officers participated in the search. They stood
there three or four minutes while the car was being
searched by two other horse thief detectives, and then
appellant was taken back to the sheriff, then to the
Marion county jail. The search of the car resulted in
finding two grips and one suitcase, and, in one of the
grips, a pint bottle of whisky. Otherwise, the grips
and suitcase contained ordinary wearing apparel. There

was testimony to the effect that the liquor was found in one of the grips while appellant was present at the car, and that he claimed the officers had planted it there. At the jail, the grips and suitcase were again searched, but nothing additional was found. The inferences to be drawn from the contradictory statements between Doncaster and appellant at the jail or after the search or arrest, the ownership of one of the grips, and that the pint of liquor was the same as that in the barrels in the truck, can have no bearing or influence upon the question of whether or not the officers were justified in searching the automobile at the time they did, or as bearing upon their authority to make a lawful arrest at the time it was made.

The most that can be said for the evidence most favorable to the state is, that the officers were engaged in searching appellant's car at the time he was 6, 7. arrested and finished the search after his arrest.

Generally speaking, the law is well settled that an unlawful arrest cannot be the foundation for a lawful search, nor will information obtained by an unlawful search alone furnish the basis for a lawful arrest; or, we may say, as a general proposition of law, that where the arrest or search is unlawful to begin with, it is not made lawful by that which afterwards takes place. *Batts* v. *State* (1924), 194 Ind. 609, 144 N. E. 24; *Weeks* v. *United States* (1913), 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B 834, Ann. Cas. 1915C 1177; *United States* v. *Slusser* (1921), 270 Fed. 818; *Dukes* v. *United States* (1921), 275 Fed. 142; *Snead* v. *Bonnoil* (1901), 166 N. Y. 325, 328, 59 N. E. 899; *People* v. *Jakira* (1922), 193 N. Y. Supp. 306, 118 Misc. Rep. 303; *Jokosh* v. *State* (1923), 181 Wis. 160, 193 N. W. 976; *Allen* v. *State* (1924), 183 Wis. 323; *Hughes* v. *State* (1921), 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639; *Cunningham & Son* v. *Baker, etc., Co.*

(1893), 104 Ala. 160, 16 So. 68, 53 Am. St. 27; *State, ex rel.,* v. *District Court* (1924), 70 Mont. 202, 224 Pac. 866; *State, ex rel.,* v. *District Court* (1924), 70 Mont. 191, 224 Pac. 862; Cornelius, Search & Seizure p. 90, §27.

It can hardly be said that the mere fact that appellant stopped and made inquiry as to what had happened upon seeing six men, an automobile and a truck standing in the road would justify his arrest or the search of his person or car. In making the arrest of appellant, it developed that he had a revolver concealed on his person, but the first knowledge the officers had of that fact was when he put his hand in his pocket upon being accosted and grabbed by the coat lapel by a person who was not shown to have any observable appearance of a peace officer, nor was there visible evidence or anything disclosed by the other persons which might readily have informed him that they were officers of the law. The arresting officers did not then or since say for what offense they made the arrest. If it was for carrying a revolver concealed, which is a misdemeanor under our statute (§2540 Burns 1926), then obviously there was no evidence justifying their action. *Pickett* v. *State* (1896), 99 Ga. 12, 25 S. E. 608, 59 Am. St. 226; *Bad Elk* v. *United States* (1900), 177 U. S. 529, 20 Sup. Ct. 729, 44 L. Ed. 874. If for a felony, no evidence has been pointed out nor have we been able to find any which, at the time of the arrest, connected appellant with a felony committed or a breach of the peace threatened or committed, within the view of these officers, authorizing them to arrest him without a warrant. It is the law that where a felony has been or is being committed, and peace officers have reasonable and probable cause to believe that a certain person was the offender, then they would be justified in arresting him without a warrant. *Doering* v. *State*

(1874), 49 Ind. 56, 19 Am. Rep. 669; *Harness* v. *Steele* (1902), 159 Ind. 286, 64 N. E. 875; *Thomas* v. *State* (1925), 196 Ind. 234, 146 N. E. 850; *Murphy* v. *State* (1926), *ante* 360, 151 N. E. 97. But there was no attempt at the trial to introduce evidence for the purpose of showing reasonable and probable cause for making the arrest, unless it can be said that the arrest followed the search of appellant's car.

The province of this court is limited to a review of the questions presented by, and they are to be tried by the record of the case. It is organized to pronounce the law as it finds it, regardless of the class of cases brought to its attention. The expression, "the end justifies the means," has never been adopted as a part of the legal jurisprudence of this state. It is an old saying, and as true as it is old, that a hard case makes bad law.

It must be kept in mind that the question we are now considering involves the initial step in this case, and not after-acquired knowledge pertaining to appellant's criminality. The answer to the question here presented cannot be predicated upon what might have been done, but must result as a matter of law from that which was done. Applying this principle to the record in the instant case compels the conclusion that the arrest of appellant was without warrant of law. In this connection, we have yet to consider the search warrant phase of the case. It is apparent that nothing had been said or done by appellant, nor was there any showing of anything perceptible about the car, or facts known or reliable information received by any of the officers there present which would justify them in making the search without a warrant so to do.

Our attention has been called to the case of *Carroll* v. *United States* (1923), 267 U. S. 132, 45 Sup. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, as an authority

for the search without a warrant. The facts in that case, as appears from a statement by Chief Justice Taft, who wrote the chief opinion of the court, clearly distinguish it from the case at bar. That opinion refers to the case of *Amos* v. *United States* (1920), 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, and to what it held, saying: "It was held that where concealed liquor was found by government officers without a search warrant in the home of the defendant, in his absence, and after a demand made upon his wife, it was inadmissible as evidence against the defendant, because acquired by an unreasonable seizure." He then directed his attention to the seizure of contraband goods in course of transportation, as affected by the Fourth Amendment to the federal Constitution, and said: "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, *upon a belief, reasonably arising out of circumstances known to the seizing officer*, (our italics) that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." The reason for slightly relaxing the rule which ordinarily applies to a store, dwelling house and such like, by permitting the search of automobiles and other vehicles under certain circumstances without an official warrant, rests upon the fact that a vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. The opinion then proceeds: "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully

using the highways to the inconvenience and indignity of such a search. * * * But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

Sections 11 and 14 of the Constitution of Indiana, and the Fourth and Fifth Amendments to our federal Constitution contain similar provisions by which the rights of the individual are secured, in the one case, against arbitrary and unlawful conduct on the part of the state and its officers, and in the other, against the arbitrary and unlawful conduct on the part of the federal government and its officers.

Section 27, Acts 1917 p. 15, as amended (Acts 1921 p. 736, §5), is in many respects the same as §26 of the national Prohibition Act, which, along with the Fourth Amendment, *supra*, was considered in the Carroll case, and was the basis for the conclusion that automobiles or vehicles of transportation might be searched without a warrant under certain conditions and circumstances to which we have already called attention. Since the constitutional provision, §11, *supra*, forbids unreasonable search and seizure, except upon probable cause as the ground for issuing a warrant, or for the search without a warrant in case of vehicles, it would seem to follow that this restriction thus imposed, like all other constitutional inhibitions, must be treated as a judicial question, and we so hold.

After a full and careful consideration of the record before us, we are convinced that the evidence fails to show probable cause for making the search. Hence the search in this case was unlawful, and the trial court erred in admitting the evidence resulting from the search.

Judgment reversed, with instructions that the trial court grant appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.